Rockingham
No. 2007-662

CHRISTOPHER BENNETT & a.

v.

TOWN OF HAMPSTEAD

TOWN OF HAMPSTEAD

v.

CHRISTOPHER BENNETT & a.

Argued: May 7, 2008
Opinion Issued: July 11, 2008

478

*Sumner F. Kalman, Attorney at Law, P.C.*, of Plaistow (*Sumner F. Kalman* and *Thea S. Valvanis* on the brief, and *Mr. Kalman* orally), for the petitioners.

*Soule, Leslie, Kidder, Sayward & Loughman, P.L.L.C.*, of Salem (*Diane M. Gorrow* on the brief and orally), for the respondent.

DUGGAN, J. In these consolidated cases, the petitioners, Christopher Bennett, Alycia Bennett, and Bennett Landscaping, Inc. (collectively Bennett), appeal two rulings by the Trial Court (*McHugh*, J.) concerning attorney's fees. We hold that RSA 676:17, II (Supp. 2007) required the trial court to award attorney's fees to the respondent, Town of Hampstead (town), because the town prevailed in its action for injunctive relief against the petitioners. We further hold that, because the trial court did not find that Bennett's due process rights were violated, Bennett is not entitled to attorney's fees for its declaratory judgment action against the town. Accordingly, we affirm.

I

The trial court found the following relevant facts. Since March 1998, Christopher and Alycia Bennett have owned and resided at property

located in a residential zone of the town that prohibits commercial uses. In June 1998, the town's zoning board of adjustment (ZBA) granted Bennett a special exception "to permit a home occupation—use of premises in connection with landscaping and property maintenance business." When applying for the special exception, Bennett informed "the ZBA that fertilizer and other materials would be stored in the garage, that there would be one full-time employee plus two college students working during the summer, that the proposed business would not be injurious or obnoxious, and that the lot was screened from view."

In 2005, an abutter complained to the town that there was "noise, smoke and dust from heavy machinery, [and a] smell of manure and composting materials," coming from Bennett's property. The abutter also complained that the property had "unsightly stockpiles of loam, compost and other materials . . . which w[ere] visible from the abutter's property." In response, the town's chief building official, Kristopher Emerson, viewed the property several times and determined that there appeared to be a "loam/composting operation—commercial activity on site." He wrote a letter to that effect to Bennett, but the letter was never picked up from the post office.

In January 2006, Emerson asked the town's code enforcement officer, Colleen King, to contact the abutter, who confirmed that the problems were continuing. In February and March, King conducted home occupation inspections of Bennett's property, and confirmed the abutter's complaints. Specifically, she observed: (1) "that trees had been cleared in the rear of the Bennett property, eliminating visual screening of the operations"; (2) "[l]arge piles of mulch, loam and compost were stored outside, as well as pallets with pavers and bricks, concrete partitions filled with different types of stone, and other landscaping materials"; and (3) that there was "a large dump truck, a large front-end loader, a large tractor, a bulldozer, a Bobcat, a skid steer, three large trailers to transport tractors, two pickup trucks, and a backhoe all parked outside" in the yard. She also learned that Bennett had two to three full-time employees, three to four part-time employees, and six to eight part-time summer employees. Based upon these observations, King determined that Bennett had exceeded the terms of the special exception.

On March 27, 2006, King sent a certified letter to Bennett expressing her conclusions. Because that letter was not picked up, King, with a police escort, hand-delivered the same letter to Bennett on April 10, 2006. The letter stated, in pertinent part:

> On February 10, 2006, I conducted a periodic Home Occupation Inspection for your property . . . as required by the Hampstead Zoning Ordinance IV-6:9. During that inspection, there was clear

evidence that Bennett Landscaping Inc. has expanded and has grown beyond the originally approved conditions and scope of your Home Occupation Permit. In addition, there have been complaints regarding the noise, equipment, offensive odors and change to the residential character of the neighborhood.

You are hereby notified that your Home Occupation Permit is being revoked and that you must cease and desist all operations of Bennett Landscaping . . . effective May 5, 2006. Permit holders whose permits are revoked may make application to the [ZBA] for a new permit on changed circumstances of the business. The application deadline for the May [ZBA] meeting is Thursday, April 13, 2006.

After Mr. Bennett met with King later that day, King wrote a letter to Bennett dated April 12, which stated: "In the spirit of cooperation and balancing your business needs with what is allowed by Hampstead Zoning, I agreed to amend the date of the Cease and Desist on your Home Occupation permit from May 5, 2006 to July 10, 2006." By letter dated April 21, Bennett advised King that it needed time to review its options and would not agree to remove the business from the property.

On May 1, 2006, the town's attorney sent Bennett a letter informing it that "to remedy the zoning violations, [Bennett needed to] within five business days of [its] receipt of th[e] letter come up with an agreement with the Town to remedy the violation." The letter also advised Bennett:

[U]nder RSA 676:17, should the Town have to initiate a court action against you to remedy the violation, you will be subject to a civil penalty of up to $275 for the first offense and $550 for subsequent offenses for each day that you remain in violation after the date on which you first received written notice from the Town. That written notice . . . was given to you on April 10, 2006. Besides paying a civil penalty, you will also have to pay for the Town's attorney['s] fees and costs . . . . [I]f you do not remedy the situation by coming up with a written agreement with the Town within five business days, the Town will be forced to go to court and will seek civil penalties and recovery of its attorney['s] fees and costs.

On May 3, Bennett filed a petition for declaratory judgment, requesting that the trial court declare: (1) certain provisions of the town's zoning ordinance unconstitutional both facially and as applied because they violate the procedural due process provisions of both the State and Federal Constitutions; (2) that its use of the premises as a landscaping business is

protected as a preexisting use under the zoning ordinance; and (3) that the cease and desist order by King was null and void. The town responded by filing a petition for preliminary and permanent injunctions against Bennett. Asserting that Bennett had violated several provisions of the town's zoning ordinance and had expanded the scope of its special exception, the town requested that the court, among other things: (1) permanently restrain and enjoin Bennett from operating a commercial business or conducting commercial activities at its property; (2) order Bennett to remove all commercial equipment vehicles, landscaping supplies, compost, loam and other materials from the property; and (3) impose a penalty pursuant to RSA 676:17, I, for each day that Bennett continued to operate a commercial business at the property. The cases were subsequently consolidated.

The trial court granted the town's request for a preliminary injunction, and enjoined Bennett from operating a construction business on the property, causing noise by the screening of loam, and engaging in the commercial composting of any materials on the property. The court further directed Bennett to remove any piles of commercial compost stored on the property, and cease operation of noisy and heavy equipment at the back of the property except during business hours. The trial court did not, however, prevent Bennett from operating its landscaping business.

After a two-day trial, at which the trial court viewed Bennett's property and the abutting properties, and heard the testimony of nine witnesses, the trial court ruled that Bennett's use of the property was not protected as a preexisting nonconforming use, and that Bennett was not using the property in compliance with the special exception for a landscaping business. The court also explicitly rejected Bennett's assertions that: (1) the town's zoning ordinance was unconstitutional; (2) its due process rights were violated; (3) it had no complete and adequate remedy at law; and (4) it was entitled to attorney's fees because it was either "forced to litigate against an opponent whose position [wa]s patently unreasonable," or "forced to seek judicial assistance to secure a clearly defined right" and it established "bad faith on the part of the Town."

The trial court made detailed findings of fact and rulings of law. The court also issued a written order that "in summary fashion set forth the reasons for its ultimate decision." In that order, the trial court noted:

> [A]ny constitutional violations that Chris Bennett alleged were committed by the Town of Hampstead fall into the category of "no harm no foul." While the Town did order him to cease his landscaping business in April of 2006, in fact he never had to do so because a Court Order permitting him to conduct that business issued in July of 2006. Mr. Bennett's counsel at the time of trial conceded that the only damages that he had as a result of his

constitutional claims was (*sic*) attorney['s] fees. In light of its findings the Court will not order the Town of Hampstead to be responsible for Chris Bennett's attorney['s] fees in this case. . . .

[The letter from King to Bennett] states that he would lose [the home occupation] permit by a date certain.

If in fact Mr. Bennett did nothing and the Town actually revoked the permit on May 5, 2006 *there may well have been a due process violation.* The fact that the Town later agreed to extend the date for surrendering said permit until July in no way changed its initial directive to cease and desist the operation of the landscaping business. Because Mr. Bennett elected to bring a lawsuit, any due process violation was *corrected* through the legal process and thus no damages flow from it to him.

(Emphases added.) The trial court also "elect[ed] not to award either party attorney['s] fees because it d[id] not find either party had the requisite malice to warrant the payment of th[o]se fees."

Thereafter, the town timely moved for reconsideration, arguing that the trial court applied the wrong legal standard in ruling upon the town's request for attorney's fees. The town argued that the statute upon which it sought attorney's fees, RSA 676:17, II, did not require a finding of malice in order for it to recover its fees, but rather that the town simply have been the prevailing party. Because the trial court's "[o]rder establishe[d] that the Town was the prevailing party in its enforcement action," the town requested reconsideration of the denial of its attorney's fees.

Bennett countered that the trial court had never established that the town was the prevailing party. The trial court, however, granted the town's request for reconsideration. It stated: "Given that the majority of this case involves whether or not Mr. Bennett was making an improper use of his property, and the [court] found that he was, then the Town is the prevailing party on this issue. Accordingly, the [court] will entertain a claim for [attorney's] [f]ees . . . ."

Subsequently, Bennett filed a motion requesting that the court entertain its claim for attorney's fees. Bennett argued that it was entitled to attorney's fees because its procedural due process rights had been violated, and, consequently, it was forced to seek judicial assistance to secure those clearly defined and established rights. *See Blouin v. Sanborn*, 155 N.H. 704, 708 (2007). Bennett also asserted that, because "[t]he town . . . insist[ed] it [wa]s entitled to mandatory attorney['s] fees by statute," equity required the court "to revisit the subject of attorney['s] fees, as claimed by both parties."

The town countered that Bennett's motion was untimely because it was filed after the ten-day reconsideration period. *See* SUPER. CT. R. 59-A. The town also argued that Bennett's motion had no factual or legal support because Bennett was not a prevailing party, the court never found that the town acted with bad faith, and the court never found that Bennett "secured a clearly defined and established right." Thus, the town argued, Bennett had not been awarded "affirmative relief or success on the merits" and was not entitled to attorney's fees. The trial court denied Bennett's motion.

On appeal, Bennett argues that the trial court erred by: (1) awarding the town attorney's fees under RSA 676:17, II; and (2) failing to reconsider its request for attorney's fees. We address each argument in turn, but first set forth our standard of review.

■ "A prevailing party may be awarded attorney's fees when that recovery is authorized by statute, an agreement between the parties, or an established judicial exception to the general rule that precludes recovery of such fees." *Blouin*, 155 N.H. at 708. We will not overturn a trial court's award of attorney's fees unless it is an unsustainable exercise of discretion. *Id.* In applying this standard, we keep in mind the substantial deference given to the trial court's decision on attorney's fees, and uphold the decision if the record provides some support for it. *Demers Agency v. Widney*, 155 N.H. 658, 665 (2007); *see also Town of Swanzey v. Liebeler*, 140 N.H. 760, 765 (1996).

## II

The trial court found authorization for its award of attorney's fees to the town in RSA 676:17, II. Thus, we must interpret that statute. We are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Carr & Edmunds*, 156 N.H. 498, 503-04 (2007). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* at 504. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.* Unless the statutory language is ambiguous, we will not examine legislative history to aid our analysis. *Green Crow Corp. v. Town of New Ipswich*, 157 N.H. 344, 346 (2008). The interpretation and application of a statute present questions of law, which we review *de novo*. *ElderTrust of Fla. v. Town of Epsom*, 154 N.H. 693, 696 (2007).

RSA 676:17, II provides, in pertinent part:

In any legal action brought by a municipality to enforce, by way of injunctive relief as provided by RSA 676:15 or otherwise, any local ordinance, code or regulation adopted under this title, or to enforce any planning board, zoning board of adjustment or building code board of appeals decision made pursuant to this title, . . . the municipality *shall* recover its costs and reasonable attorney's fees actually expended in pursuing the legal action if it is found to be a prevailing party in the action.

(Emphasis added.) RSA 676:15 (1996) permits local officials who have authority to enforce the provisions of any local ordinance, code or regulation to "institute injunction, mandamus, abatement, or any other appropriate action or proceeding to prevent, enjoin, abate, or remove [an] unlawful erection, construction, alteration, or reconstruction" of "any building or structure or part thereof."

■ ■ We determine the legislature's intent as to the mandatory or directory nature of a particular statutory provision primarily from the language used in the provision. *City of Rochester v. Corpening*, 153 N.H. 571, 574 (2006). The general rule of statutory construction is that the word "may" makes enforcement of a statute permissive, and that the word "shall" requires mandatory enforcement. *Id.* Thus, in *Liebeler*, 140 N.H. at 764, we held that, under the prior version of RSA 676:17, II (1996), in which the legislature had used the words "may recover," the trial court had discretion to deny the town's request for fees. By amending RSA 676:17, II to use the words "shall recover," the legislature removed such discretion from the trial court. RSA 676:17, II now mandates that in any legal action brought by a municipality to enforce an ordinance, code, regulation, or zoning board decision in which the municipality "is found to be a prevailing party in the action," the municipality is *entitled* to recover reasonable attorney's fees actually expended in pursuing that action.

Here, the trial court found that "the Town [wa]s the prevailing party on th[e] issue" presented in "the majority of th[e] case"; that is, "whether or not Mr. Bennett was making an improper use of his property." Accordingly, the court awarded the town attorney's fees for its enforcement action. The record supports the trial court's finding that the town was the prevailing party in its enforcement action.

In its action for injunctive relief, the town asserted that Bennett violated several provisions of the town's zoning ordinance, and exceeded the scope of its special exception for a landscaping business. The trial court found in favor of the town on both questions, and, consequently, ordered Bennett to limit its activity to the landscaping business, and to "comply with all of the Town of Hampstead's Home Occupation Regulations contained in the

Town's Zoning Ordinance." Thus, because the town prevailed in its enforcement action against Bennett, the trial court was required to award the town reasonable attorney's fees for this action.

Bennett argues that awarding the town attorney's fees in this case conflicts with its procedural due process rights. Specifically, Bennett asserts that the town failed to provide it adequate written notice that attorney's fees could be assessed prior to filing its enforcement action, and, thus, the town cannot recover attorney's fees when it failed to provide such notice. The town counters that RSA 676:17, II does not require a municipality to provide written notice that it can recover attorney's fees if it is found to be a prevailing party before bringing an action for injunctive relief to enforce a zoning ordinance. The town adds that, on May 1, 2006, prior to filing its enforcement action, the town's attorney provided Bennett with notice that the town could recover attorney's fees under RSA 676:17, II.

■■ "We have held that adequate notice is notice that is reasonably calculated to give the defendant actual notice of the issue to be decided at the hearing." *Liebeler*, 140 N.H. at 763 (citations omitted). Here, the town notified Bennett, in writing, before filing its enforcement action that Bennett had exceeded the scope of its special exception, Bennett was violating certain provisions of the town's zoning ordinance, and that, if it did not remedy the violations, the town would take legal action against it. In addition, the town's attorney specifically advised Bennett that, "under RSA 676:17, should the Town have to initiate a court action against [it] to remedy the violation, . . . [Bennett] w[ould] . . . have to pay for the Town's attorney['s] fees and costs." The town's attorney further explained: "if you do not remedy the situation by coming up with a written agreement with the Town within five business days, the Town will be forced to go to court and *will seek* civil penalties and *recovery of its attorney['s] fees and costs.*" (Emphases added.) This letter not only informed Bennett of the possibility that it may have to pay attorney's fees, but also cited the statute upon which the town had authority to request such fees. Thus, Bennett had reasonable written notice that it was in fact in violation of both its special exception and a town ordinance, and that the town could recover attorney's fees. *Cf. Town of Nottingham v. Newman*, 147 N.H. 131, 136 (2001).

Further, every person is presumed to know the law, *id.*, and RSA 676:17, II clearly states that the town is entitled to recover reasonable attorney's fees if it is found to be a prevailing party in a legal action brought to enforce an ordinance, code, regulation, or zoning board decision. Therefore, Bennett had notice from the statute that, if the town sought legal action to remedy the violations and was found to be a prevailing party, Bennett

would be required to pay reasonable attorney's fees. *Cf. id.* We, therefore, reject Bennett's argument that it did not receive adequate notice and uphold the trial court's decision to award attorney's fees to the town under RSA 676:17, II.

## III

Bennett argues that the trial court erred in failing to reconsider its request for attorney's fees, and in failing to award it attorney's fees. Based upon the trial court's written order supplementing its detailed findings of fact and rulings of law, Bennett asserts that the trial court found that Bennett was deprived of its procedural due process rights. Bennett contends that, because it was forced to seek judicial assistance to secure those clearly defined and established rights, *see Blouin*, 155 N.H. at 708, it is entitled to attorney's fees under both state and federal law.

The town counters that Bennett's request for reconsideration and attorney's fees was untimely. The town further submits that the trial court expressly ruled that the town did not deprive Bennett of due process, and, therefore, Bennett is not entitled to attorney's fees under state or federal law.

■ The trial court did not specify its reasons for denying Bennett's motion for attorney's fees. In the absence of specific findings, however, a court is presumed to have made all findings necessary to support its decision. *In re Lisa H.*, 134 N.H. 188, 195 (1991); *see also Burns v. Bradley*, 120 N.H. 542, 546 (1980). In this case, Bennett contends that it is entitled to attorney's fees because, in its view, the trial court found that the town violated its due process rights by not providing notice and a hearing before revoking its special exception, and it was forced to seek judicial assistance to secure those rights. We disagree.

■ First, Bennett does not dispute that it filed its motion for reconsideration after the ten-day deadline for such motions. *See* SUPER. CT. R. 59-A ("A motion for reconsideration or other post-decision relief shall be filed within ten (10) days of the date on the Clerk's written notice of the order or decision."). Thus, the trial court properly could have denied that motion as untimely. *See Bedford Chapter-Citizens for a Sound Economy v. Sch. Admin. Unit #25*, 151 N.H. 612, 617 (2004); *Town of Hudson v. Baker*, 133 N.H. 750, 753 (1990).

■ Second, the record fails to support Bennett's assertion that the trial court found that the town violated Bennett's due process rights. Although the trial court noted in its written order that if Bennett had not filed its declaratory judgment action and the town "actually revoked the permit on May 5, 2006, there may well have been a due process violation," and that

"any due process violation was corrected through the legal process," we do not read this language as constituting a finding that Bennett's due process rights were violated. *See State v. Parker*, 155 N.H. 89, 91-92 (2007) (explaining that the interpretation of a trial court order is a question of law which we review *de novo*). Indeed, the trial court explicitly rejected Bennett's claim that it was "a victim of a violation of due process under the New Hampshire and Federal Constitution." Thus, because the trial court did not find that Bennett's due process rights were violated, it reasonably could have denied Bennett's request for attorney's fees on this basis.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.