Merrimack
No. 2010-296

SALVATORE RABBIA

v.

MAX E. ROCHA & a.

Argued: June 23, 2011
Opinion Issued: November 29, 2011

*Rinden Professional Association*, of Concord (*Paul Rinden* on the brief), and *Phillips Law Office, PLLC*, of Concord (*Roger B. Phillips* on the brief and orally), for the plaintiff.

*Law Offices of Edward W. Richards & Associates, P.C.*, of Nashua (*Edward W. Richards* on the memorandum of law and orally), for the defendants.

*Winer and Bennett, LLP*, of Nashua (*David K. Pinsonneault* on the brief and orally), for the intervenor.

LYNN, J. The plaintiff, Salvatore Rabbia, appeals an order of the Superior Court (*Sullivan,* J.) directing that $37,000 plus interest currently being held in escrow be dispersed to the intervenor, Automotive Finance Corporation, instead of to the plaintiff, and denying the plaintiff's motion for attorney's fees. We affirm in part, reverse in part and remand.

## I. Background

Before going out of business in 2008, the corporate defendant, Harvard Auto Sales, Inc., d/b/a Hitcars.com (Harvard Auto), and its principals, defendants Max E. Rocha and Evangelos Karagianis, were in the salvage motor vehicle business. The intervenor and the plaintiff are two of Harvard's creditors. The intervenor financed Harvard's purchase of inventory; the plaintiff was involved in a long-standing dispute with Harvard, which settled in March 2008. The instant appeal concerns the plaintiff's and

the intervenor's competing claims to funds the defendants gave to their counsel to hold in escrow in the summer of 2008, while settlement discussions with the plaintiff were ongoing.

### A. Harvard and the Intervenor

The intervenor provided "floor plan financing" to Harvard, that is, Harvard borrowed money from the intervenor against a line of credit to purchase vehicles. *See* R. BILLINGS, JR., FLOOR PLANNING, RETAIL FINANCING & LEASING IN THE AUTOMOBILE INDUSTRY §1.4, at 7 (2004). Pursuant to this arrangement, which began in 2002, Harvard was required to hold "in trust" a portion of the proceeds of any given vehicle sale for payment to the intervenor to amortize Harvard's debt. In exchange for the intervenor's financing, Harvard granted the intervenor a security interest in all of its assets, including its vehicles "and other inventory of any kind" owned or acquired by Harvard, "all documents, including but not limited to . . . accounts, . . . monies, . . . deposit accounts, . . . and general intangibles," and "any and all proceeds, products, additions, accessions, accessories, and replacements of the foregoing."

Harvard and the intervenor signed the first floor plan financing agreement in September 2002 and signed amended agreements in August 2004, September 2004, November 2005 and November 2006. The intervenor perfected its security interest by filing financing statements with the New Hampshire Secretary of State in October 2002, May 2004, August 2004, January 2007, April 2007 and June 2008. *See* RSA 382-A:9-310, -312 (Supp. 2010), -315 (2004). The intervenor's perfected security interest applied to the following collateral, described in its October 2002 financing statement: "All now owned or hereafter acquired inventory including but not limited to inventory of motor vehicles, equipment, accounts, chattel paper, general intangibles and all additions, accessions, accessories, replacements and proceeds thereof." *See* RSA 382-A:9-502 (2004).

At some point before November 19, 2008, the intervenor discovered that Harvard's accounts were "out of trust," meaning that Harvard had failed to pay the intervenor as required under the floor plan financing arrangement. *See* BILLINGS, JR., *supra* §1.4, at 7. As a result, the intervenor brought a replevin action to repossess Harvard's cars subject to its security interest. As of December 1, 2009, Harvard owed the intervenor $1,523,664.14, including attorney's fees.

### B. Harvard and the Plaintiff

Until March 2008, the plaintiff was involved in a dispute with the defendants concerning $201,000 he claims to have given the defendants to become a shareholder in Harvard and $216,000 he claims to have lent them,

which they refused to repay. In March 2008, the dispute was settled. However, as a result of various challenges to the settlement, on May 27, 2008, the trial court ordered payments under the settlement to be made in escrow. On July 1, 2008, the defendants brought a $25,000 cashier's check to their attorney, made payable to the attorney's law firm. At a July 10, 2008 hearing, the attorney informed the court about the check, and the court ordered him to put it in his client trust account or an escrow account. The following day, the court issued an order stating that "the previously ordered escrowed payments shall continue to be made." As a result, in addition to the $25,000 cashier's check, the defendants gave additional checks to their attorney, which the attorney placed into an escrow account. The total amount held in escrow was $37,000 plus interest.

On October 29, 2008, the trial court granted the plaintiff's motion to enforce the settlement and ordered defense counsel to place the previously escrowed funds into "an interest-bearing escrow account, to be disbursed to the plaintiff with interest following expiration of the appeal period, unless otherwise agreed by the parties." In the event of an appeal, the trial court decided that its orders requiring payment to the plaintiff would be stayed and the funds would continue to be held in escrow. The defendants appealed the trial court's order enforcing the settlement, and we affirmed the trial court's decision in an unpublished order, *Salvatore Rabbia v. Max E. Rocha & a.*, No. 2008-0918 (July 31, 2009).

### C. The Instant Dispute

In August 2009, the defendants paid the escrowed funds into court and filed a motion in the settlement action asking the court to decide whether they should be released to the plaintiff or the intervenor. In September 2009, the intervenor petitioned to intervene in the matter and to recover the escrowed funds. At a December 2009 hearing at which the trial court heard offers of proof, the plaintiff argued that he was the proper recipient of the escrowed funds because his interest in them predated any secured interest the intervenor may have had in them. The intervenor asserted that it was the proper recipient of the funds because its perfected security interest predated any interest the plaintiff may have had in them. Following the hearing, the trial court granted the intervenor's petition to intervene and ruled that the escrowed funds belonged to the intervenor. This appeal followed.

### II. Analysis

■ Addressing the parties' arguments requires that we interpret Article 9 of the Uniform Commercial Code (UCC). *See* RSA 382-A, art. 9 (2004 &

Supp. 2010). To do so, we rely not only upon our ordinary rules of statutory construction, but also upon the official comments to the UCC. *See* RSA 382-A:1-103(a)(3)(2011) (UCC construed to make uniform the law in various jurisdictions); *cf. In re Alex C.*, 161 N.H. 231, 240 (2010) (because our Criminal Code is largely derived from Model Penal Code, we have looked to Model Penal Code and its Commentaries when interpreting analogous New Hampshire statutes); *In the Matter of Scott & Pierce*, 160 N.H. 354, 359 (2010) (we rely upon official comments to Uniform Interstate Family Support Act); *Bendetson v. Killarney, Inc.*, 154 N.H. 637, 643 (2006) (we will look to official comments of model act for guidance on intended meaning of election statute).

Under our ordinary rules of statutory construction, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Scott & Pierce*, 160 N.H. at 359. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.*

Although we review the trial court's statutory interpretation *de novo*, *Bendetson*, 154 N.H. at 641, we will uphold its factual findings unless the evidence does not support them or they are erroneous as a matter of law. *In the Matter of Salesky & Salesky*, 157 N.H. 698, 707 (2008).

For the purposes of this appeal, we assume, without deciding, that the intervenor had a perfected security interest in the escrowed funds. Relying upon RSA 382-A:9-332, the plaintiff argues that any such interest was extinguished when we affirmed the trial court's order enforcing the parties' settlement and requiring the escrowed funds to be disbursed to the plaintiff with interest. The plaintiff argues that once this occurred, legal and equitable title to the funds passed to him, and, thus, a "transfer" within the meaning of RSA 382-A:9-332 occurred, extinguishing the intervenor's secured interest in the funds. *See* RSA 382-A:9-332(a) ("A transferee of money takes the money free of a security interest unless the transferee acts in collusion with the debtor in violating the rights of the secured party."); RSA 382-A:9-332(b) ("A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party."). We agree.

The purpose of RSA 382-A:9-332 is to "afford[] broad protection to transferees who take funds from a deposit account and to those who take money." RSA 382-A:9-332 cmt. 2. Such broad protection "helps to ensure

that security interests in deposit accounts do not impair the free flow of funds" and "minimizes the likelihood that a secured party will enjoy a claim to whatever the transferee purchases with the funds." RSA 382-A:9-332 cmt. 3. RSA 382-A:9-332 does not define the term "transferee." RSA 382-A:9-332 cmt. 2. However, "the debtor itself is not a transferee." *Id.* Thus, RSA 382-A:9-332 "does not cover the case in which a debtor withdraws money (currency) from its deposit account or the case in which a bank debits an encumbered account and credits another account it maintains for the debtor." *Id.*

For example, if a debtor draws a check on a deposit account in which a lender has a security interest, and makes the check payable to a payee, the lender's security interest in the deposit account "does not give rise to a security interest in the check." *Id.* "Unless Payee acted in collusion with Debtor in violation of Lender's rights, Payee takes the funds (the credits running in favor of Payee) free of Lender's security interest." *Id.* "This is true regardless of whether Payee is a holder in due course of the check and even if Payee gave no value for the check." *Id.*

Here, we conclude that a "transfer" occurred on July 31, 2009, when we affirmed the trial court's decision requiring disbursement of the escrowed funds to the plaintiff. As a result, the plaintiff acquired both legal and equitable title to the escrowed funds, entitling him to take them free of any perfected security interest the intervenor may have had in them.

In the typical escrow arrangement, "property is deposited with a third person for delivery to another only upon the occurrence of a stated condition. In this situation the party who deposits property into an escrow account is the owner of the account and retains title until performance of a condition by the other party." *McCarthy Bldg. Companies v. St. Louis*, 81 S.W.3d 139, 144 (Mo. Ct. App. 2002). When, however, "the condition of performance is completed, ownership of the property in the escrow account immediately transfers." *Id.* As a result of depositing property into escrow, "the grantee acquires immediate equitable title to the subject property, and upon satisfaction or performance of the escrow conditions, legal title to the property passes to the grantee." *In re Hathaway Ranch Partnership*, 127 B.R. 859, 863 (Bankr. C.D. Cal. 1990). "Rules of law governing property delivered in escrow apply to situations in which money is deposited in escrow." *McCarthy Bldg. Companies*, 81 S.W.3d at 144.

In the instant case, the funds placed in escrow were to be disbursed to the plaintiff once the dispute between the parties settled. When the trial court enforced the settlement, and we upheld its decision, the conditions for payment to the plaintiff were fully satisfied, and title to the funds "vest[ed]

at once in him." 28 AM. JUR. 2D *Escrow* §16, at 18 (2011). Accordingly, because the plaintiff had legal and equitable title to the escrowed funds as of July 31, 2009, we hold that a "transfer" within the meaning of RSA 382-A:9-332 occurred, and that he was entitled to take the escrowed funds free of the intervenor's security interest. We, therefore, reverse the trial court's determination that the escrowed funds and interest earned thereon belong to the intervenor.

The plaintiff next contends he was entitled to an award of attorney's fees from the defendants' counsel under either Superior Court Rule 59, which allows an attorney's fee award "against any party whose frivolous or unreasonable conduct makes necessary the filing of or hearing on any motion," or a judicially-created exception to the rule that each party to a lawsuit normally bears the expense of its own attorney's fees. The specific exception he cites allows an award of attorney's fees when "one party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, where the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and where it should have been unnecessary for the successful party to have brought the action." *Harkeem v. Adams*, 117 N.H. 687, 691 (1977) (quotation and citations omitted). We give substantial deference to a trial court's decision on attorney's fees, and will not overturn it "absent an unsustainable exercise of discretion." *George v. Al Hoyt & Sons, Inc.*, 162 N.H. 123, 139 (2011).

Even assuming that fees may be awarded against counsel (rather than against a party) under Rule 59 or *Harkeem*, we conclude that the trial court sustainably exercised its discretion by denying the plaintiff's request for attorney's fees. The trial court found that defense counsel did not act in bad faith or with any improper personal motive. As the record supports this finding, we uphold it.

In light of our decision, we need not address the plaintiff's assertion that the trial court erred when it granted the intervenor's petition to intervene.

*Affirmed in part; reversed in part; and remanded.*

DALIANIS, C.J., and DUGGAN and HICKS, JJ., concurred.