Rockingham
No. 2011-085

TOWN OF ATKINSON

v.

MALBORN REALTY TRUST & a.

Argued: June 13, 2012
Opinion Issued: August 17, 2012

*Sumner F. Kalman, Attorney at Law, P.C.*, of Plaistow (*Thea S. Valvanis* and *Sumner F. Kalman* on the brief, and *Mr. Kalman* orally), for the petitioner.

*McGrath Law Firm, P.A.*, of Concord (*Peter McGrath* and *Jason Beecher* on the brief, and *Mr. McGrath* orally), for the respondents.

CONBOY, J. The respondents, Malborn Realty Trust and its trustee, Daniel Osborn, appeal an order of the Superior Court (*McHugh*, J.) that enjoined Osborn from occupying property in Atkinson because he lacks an occupancy permit and that imposed a civil penalty for this violation. *See* RSA 676:15 (2008), :17 (Supp. 2011). The petitioner, Town of Atkinson (Town), cross-appeals the trial court's failure to award it attorney's fees. *See* RSA 676:17, II. We affirm the trial court's issuance of the injunction, modify its imposition of civil penalties, reverse its denial of attorney's fees, and remand.

The trial court found the following facts. Before 2007, the subject property was a seasonal camp. In June 2007, the Town's zoning board of adjustment granted Osborn a variance to convert the property to year-round use and to construct a new three-bedroom home. One condition of the variance was that access to the property had to "meet the requirements of the Police and Fire Departments."

In 2008, Osborn applied for a building permit. The Town's fire chief reviewed the application and recommended that the building permit be conditioned upon the installation of a sprinkler system because the property had poor access to a class V highway. *See* RSA 229:5 (2009) (setting forth highway classification system). The building inspector adopted this recommendation, and, in May 2008, issued the conditional building permit.

On September 30, 2008, Osborn's wife, Margaret, met with the Town's fire chief to discuss the Osborns' plan to improve access to the property by constructing a new driveway. The fire chief agreed that a satisfactory driveway could eliminate the need for a sprinkler system.

In October 2008, the Osborns submitted a proposed plan to build a driveway with a 23% grade, which the Town immediately rejected. In subsequent meetings, the fire chief told Margaret that although the required grade was 8%, he would accept a driveway with a 10% grade. The Osborns never submitted a satisfactory driveway plan to the fire chief. Ultimately, without the fire chief's consent, they installed a driveway with a 13.7% grade. They did not install a sprinkler system. Because the home lacked the required sprinkler system, the Town declined to issue a certificate of occupancy for it. Nonetheless, the Osborns moved into the home on November 30, 2009. According to the Town's building code, it is unlawful to occupy a building without a certificate of occupancy.

On or about December 14, 2009, the Town served Osborn with notice that occupying the home violated the Town's building code. The notice stated that the Town could bring an enforcement action under RSA 676:15 and an action for civil penalties and attorney's fees under RSA 676:17. In March 2010, the Town filed such an action. Later that month, following a hearing on the Town's request for a preliminary injunction, the court ordered Osborn to vacate the premises. He and his family did so on July 1, 2010.

After conducting a bench trial and a view of the premises, the trial court: (1) permanently enjoined Osborn from occupying the premises without a certificate of occupancy; (2) ruled that no certificate of occupancy could be issued until a sprinkler system is installed in the house; and (3) imposed a civil penalty of $109,725. The trial court also ruled that the Town was the prevailing party and was entitled to its reasonable attorney's fees pursuant to RSA 676:17, II. Although the court originally awarded the Town

reasonable attorney's fees of $20,000, it later vacated this award in its entirety in response to the respondents' motion for reconsideration. This appeal and cross-appeal followed.

The respondents challenge the trial court's decision to issue the requested injunction and, alternatively, its calculation of the civil penalty. In its cross-appeal, the Town challenges the trial court's denial of its request for an award of reasonable attorney's fees. We first address the respondent's appeal.

## I. Injunction

### A. Standard of Review

It is within the trial court's sound discretion to grant an injunction after consideration of the facts and established principles of equity. *N.H. Dep't of Envtl. Servs. v. Mottolo*, 155 N.H. 57, 63 (2007). We will uphold the trial court's factual findings unless the evidence does not support them or they are erroneous as a matter of law. *Rabbia v. Rocha*, 162 N.H. 734, 738 (2011). "We will uphold the issuance of an injunction absent an error of law, an unsustainable exercise of discretion, or clearly erroneous findings of fact." *Frost v. Comm'r, N.H. Banking Dep't*, 163 N.H. 365, 374 (2012).

### B. Respondents' Arguments

■ The respondents first argue that a sprinkler system was not required to secure a certificate of occupancy because the Town's fire chief waived this requirement when he met with Margaret in September 2008. Waiver is a question of fact. *So. Willow Properties v. Burlington Coat Factory of N.H.*, 159 N.H. 494, 499 (2009). "A finding of waiver must be based upon an intention expressed in explicit language to forego a right, or upon conduct under the circumstances justifying an inference of a relinquishment of it." *Id.* (quotation omitted). We will not overturn the trial judge's determination unless clearly erroneous. *Id.*

■ Here, the trial court found that "[w]hat was said during [the September 2008] meeting is the core dispute between the parties. It is a classic he said-she said exchange." After considering "all the evidence presented on th[e] issue," the trial court credited the fire chief's version of the conversation. "While the testimony presented by the parties conflicted, the trial judge was in the best position to evaluate the evidence, measure its persuasiveness and assess the credibility of the witnesses." *In the Matter of Henry & Henry*, 163 N.H. 175, 180 (2012) (quotation omitted). We defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the

weight to be given evidence. *Id.* at 183. As the fact finder, the trial court was entitled to accept or reject, in whole or in part, the testimony of any witness or party, and was not required to believe even uncontroverted evidence. *Id.* at 181.

■ The respondents next assert that based upon the fire chief's representations during his meeting with Margaret in September 2008, the doctrine of municipal estoppel precludes the Town from requiring Osborn to install a sprinkler system. "The doctrine of municipal estoppel has been applied to municipalities to prevent unjust enrichment and to accord fairness to those who bargain with the agents of municipalities for the promises of the municipalities." *Thomas v. Town of Hooksett*, 153 N.H. 717, 721 (2006). The elements of estoppel are: First, a false representation or concealment of material facts must have been made with knowledge of those facts; second, the party to whom the representation was made must have been ignorant of the truth of the matter; third, the representation must have been made with the intention of inducing the other party to rely upon it; and fourth, the other party must have been induced to rely upon the representation to his or her injury. *Id.* "Each element of estoppel requires a factual determination." *Id.* (quotation omitted).

■ The respondents contend that "the representations of the Fire Chief constituted a waiver of the requirement for a sprinkler system," and that the Osborns "reasonably relied on th[is] representation . . . and acted accordingly" to their detriment. Here, having credited the fire chief's version of the September 2008 meeting, the trial court found that the fire chief did not represent, falsely or otherwise, that the sprinkler requirement was waived. As there is evidence to support this finding, and it is not legally erroneous, we uphold it. *See Rabbia*, 162 N.H. at 738.

The respondents next argue that requiring the Osborns to install the sprinkler system violates Laws 2010, chapter 282. *See* RSA 153:5, :10-a, III (Supp. 2011); RSA 155-A:10, VII (Supp. 2011). We review the trial court's statutory interpretation *de novo. Frost*, 163 N.H. at 374. We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We also interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.*

■ Laws 2010, chapter 282 precludes a municipality from adopting or enforcing "any ordinance, regulation, code, or administrative practice

requiring the installation of fire sprinkler systems in any new or existing detached one-or 2-family dwelling unit in a structure used only for residential purposes" before July 1, 2011, "unless such adoption is earlier authorized by law." Laws 2010, 282:4. The respóndents argue that this section barred the Town from enforcing the sprinkler requirement. However, the trial court found that the Town's fire chief was not enforcing a municipal ordinance, regulation, code or practice, but instead was adhering to regulations adopted by the State Fire Marshall. *See* N.H. ADMIN. RULES, Saf-C 6008.01. As evidence in the record supports this finding, we uphold it. *See Rabbia,* 162 N.H. at 738.

Laws 2010, chapter 282 also precludes the State Fire Marshall from adopting rules that "require automatic suppressant or sprinkler systems in detached one- or 2-family dwelling units in a structure used only for residential purposes." Laws 2010, 282:1. Except for such rules, Laws 2010, chapter 282 allows the State Fire Marshall to "adopt the most recent edition of . . . the national fire protection association code or other recognized codes as rules, in whole or in part." *Id.*

The respondents do not assert that the state regulations at issue violate Laws 2010, chapter 282. We observe that these regulations adopt the National Fire Protection Association (NFPA) Fire Code, which allows fire chiefs to mandate sprinkler systems when "[s]ite conditions or unique structure designs . . . result in a fire department access road design that does not meet the specific requirements" of the NFPA Fire Code. NFPA 1 UNIFORM FIRE CODE HANDBOOK § 18.2.2.1.2 comment at 378 (2003); *see* NFPA 1 FIRE CODE §§ 3.2.2, 18.2.3.1.4 (2009); *see also* N.H. ADMIN. RULES, Saf-C 6008.01 to 6008.03. Accordingly, we hold that requiring the Osborns to install a sprinkler system did not violate Laws 2010, chapter 282.

■ The respondents next assert that an injunction was not warranted in this case because the fire chief and/or the Town acted arbitrarily, unreasonably, and/or capriciously. In effect, they claim that the balance of equities in this case weighs in their favor. Our task on appeal is not to reweigh the equities. Because the respondents have failed to persuade us that the trial court committed an error of law or an unsustainable exercise of discretion, or made clearly erroneous findings of fact, we uphold its decision to enjoin Osborn from occupying the premises until a sprinkler system is installed. *See Frost,* 163 N.H. at 374.

*II. Civil Penalty*

The trial court imposed a civil penalty pursuant to RSA 676:17, I, which provides, in pertinent part:

Any person who violates . . . any requirement or condition of a permit or decision issued by, any local administrator or land use board . . . shall be subject to a civil penalty of $275 for the first offense, and $550 for subsequent offenses, for each day that such violation is found to continue . . . after the date on which the violator receives written notice from the municipality that the violator is in violation, whichever is earlier. Each day that a violation continues shall be a separate offense.

The trial court found that the violation continued for 200 days — from December 14, 2009, when the notice of violation was received, until July 1, 2010, when Osborn and his family vacated the premises. The court imposed a civil penalty of $275 for the first day of the violation and a penalty of $550 for the additional 199 days of the violation ($550 x 199 = $109,450). The total civil penalty imposed was $109,725 ($275 + $109,450).

As the respondents rightly concede, the last sentence of RSA 676:17, I, was added in 2009 in response to our decision in *Town of Amherst v. Gilroy*, 157 N.H. 275 (2008). *See* N.H.H.R. JOUR. 64 (2009). In *Gilroy*, 157 N.H. at 278-79, we held that because the pre-2009 version of the statute lacked this last sentence, "a continuing violation [was] a single offense." *See* RSA 676:17, I (2008) (amended 2009). Following our decision in *Gilroy*, the legislature added the last sentence, which, as the respondents also rightly concede, means that RSA 676:17, I, like other statutes with similar language, "authorizes a separate, individual penalty for each day" of violation. *Gilroy*, 157 N.H. at 279 (quotation omitted); *see Simpson v. Young*, 153 N.H. 471, 474-75, 478 (2006) (construing RSA 540-A:4, IX); *Town of Henniker v. Homo*, 136 N.H. 88, 88-90 (1993) (construing RSA 236:127).

The respondents first argue that the total civil penalty imposed should have been only $275. They contend that because a copy of the pre-2009 version of RSA 676:17, I, was attached to the notice of violation they received, that version controls. Thus, they argue that imposing a civil penalty pursuant to the post-2009 version of RSA 676:17, I, violates their constitutional rights to procedural due process.

However, the record does not reflect, and the respondents have not pointed to, any evidence that this argument was made in the trial court. *See Baer v. N.H. Dep't of Educ.*, 160 N.H. 727, 732 (2010). It is the burden of the appealing party, here the respondents, to provide this court with a record sufficient to demonstrate that the issues on appeal have been raised before the trial court. *See id.* Because the respondents have not demonstrated that

they preserved their procedural due process arguments for our review, we decline to address them. *See Bank of N.Y. Mellon v. Cataldo*, 161 N.H. 135, 139 (2010).

The respondents assert, in the alternative, that the trial court miscalculated the civil penalty by assessing the first day of violation at $275 and each subsequent day at $550. They contend that because there was only one notice of violation, the penalty imposed should have been $275 per day for each of the 200 days of the offense, or $55,000. We agree.

 "[W]hen interpreting statutes, we do not merely look at isolated words or phrases, but instead we consider the statute as a whole." *Appeal of Alexander*, 163 N.H. 397, 409 (2012) (quotation omitted). Under the plain meaning of RSA 676:17, I, the civil penalty imposed is $275 per day "for the first offense" and $550 per day "for subsequent offenses." Reading RSA 676:17, I, as a whole, we conclude that the word "offense" refers to the violation(s) for which "the violator receives written notice from the municipality that the violator is in violation." Here, because the Town issued only one notice of violation, only a "first offense" is at issue. Pursuant to RSA 676:17, I, therefore, the respondents are subject to a penalty of $275 for each of the 200 days of this offense ($275 x 200 = $55,000). Accordingly, we modify the trial court's order to reduce the civil penalty imposed to $55,000.

*III. Attorney's Fees*

 In its cross-appeal, the Town argues that the trial court erred when it declined to award the Town any of its reasonable attorney's fees pursuant to RSA 676:17, II. "A prevailing party may be awarded attorney's fees when that recovery is authorized by statute, an agreement between the parties, or an established judicial exception to the general rule that precludes recovery of such fees." *Bennett v. Town of Hampstead*, 157 N.H. 477, 483 (2008) (quotation omitted). "We will not overturn a trial court's award of attorney's fees unless it is an unsustainable exercise of discretion." *Id.*

 RSA 676:17, II provides that in an enforcement action, such as this one, "the municipality *shall* recover its costs and reasonable attorney's fees actually expended in pursuing the legal action if it is found to be a prevailing party." (Emphasis added.) An award of prevailing party attorney's fees under this section is mandatory. *Id.* at 484-85.

The trial court initially awarded the Town $20,000 as its reasonable attorney's fees. The trial court later vacated this award on the ground that because the Town's counsel is paid on retainer, counsel could not demonstrate the reasonable attorney's fees the Town "actually expended" on this case. RSA 676:17, II. In its ruling, the trial court construed the phrase

"actually expended" to mean money actually paid to counsel. The trial court evidently decided that because Town counsel is paid a general retainer, the court could not determine what the Town paid counsel for his work on this case.

 Although the trial court's decision arguably is consistent with one definition of "to expend," which is "to pay out," this is not the only meaning of the word. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 799 (unabridged ed. 2002). Another definition of "to expend" is "to consume by use." *Id.* A general retainer is "consumed by use" when it is depleted.

 Given the evident purpose of RSA 676:17, II, which is to mandate an award of reasonable attorney's fees to a prevailing municipality, *see Bennett*, 157 N.H. at 484-85, we hold that when a municipal attorney is paid under a retainer agreement, the phrase "actually expended" means the amount of the retainer that has been depleted because of the attorney's work on the enforcement action. Therefore, we reverse the trial court's ruling that the Town was not entitled to any of its reasonable attorney's fees, and remand for further proceedings consistent with this opinion.

*Affirmed in part; modified in part; reversed in part; and remanded.*

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.