Merrimack
No. 2011-394

LAKES REGION GAMING & a.

v.

JEREMEY MILLER

Argued: January 10, 2013
Opinion Issued: February 13, 2013

*Orr & Reno, P.A.*, of Concord (*Jeffrey C. Spear* on the brief and orally), for the plaintiffs.

*Steiner Law Offices, PLLC*, of Concord (*R. James Steiner* on the brief and orally), for the defendant.

DALIANIS, C.J. The defendant, Jeremey Miller, appeals the Superior Court's (*McNamara*, J.) order finding in favor of the plaintiffs, Lakes Region Gaming, LLC (Lakes Region Gaming) and three of its members — Christopher G. Gistis, his son (Glenn M. Gistis), and Lawrence N. Kasser — on their claim that Miller breached his fiduciary duties to them. We affirm.

The trial court found, or the record supports, the following facts. In 2005, Christopher Gistis agreed with David J. Johnston to purchase the Lakes Region Greyhound Park in Laconia through a court-approved bidding

process. Gistis and Johnston formed a joint venture pursuant to which Johnston's development company, David Johnston Development LLC (Johnston Development), would bid on the race track, and Gistis would provide the requisite deposit. On April 18, 2005, Johnston Development successfully bid $4,101,002 to purchase the race track. In connection with the bid, Gistis wired a deposit of approximately $205,000 to the escrow account of the seller's attorney.

Approximately nine days later, Johnston Development and Gistis formed Lakes Region Gaming in order to "own and manage the premises known as 'Lakes Region Greyhound Park' and to engage in any and all activities related or incidental thereto." The other members of Lakes Region Gaming were: Glenn Gistis, Kasser, and Miller. The parties agreed that Johnston Development would contribute its right to purchase the race track to Lakes Region Gaming as part of the capitalization of the company, and that Lakes Region Gaming would own the track.

On May 19, 2005, Johnston Development and the seller entered into a purchase and sale agreement for the race track that gave Johnston Development until July 18, 2005, to conduct due diligence. If Johnston Development failed to notify the seller by July 18 as to whether it intended to proceed with the transaction, the $205,000 deposit would be forfeited.

The transaction to purchase the race track never closed because, in June 2005, a New Hampshire grand jury indicted a dozen people involved with the track, which caused the members of Lakes Region Gaming to reconsider the purchase decision. The members decided to try to sell the right to purchase the race track so that they could recoup their expenses or make a profit. If a profit were realized, it would be split according to each member's interest in the company.

Unbeknownst to the plaintiffs, Miller and Johnston had been negotiating the right to purchase the race track with a number of potential buyers. As a result of these negotiations, on July 17, 2005, Torguson Gaming Group, Inc. (Torguson) agreed with Johnston to pay $5,000,000 for the right to purchase the race track for $4,101,002, resulting in a net profit of $898,998.

Also unbeknownst to the plaintiffs, on July 18, Johnston agreed with the seller's attorney to extend the due diligence period until July 25, in exchange for Miller paying the attorney $50,000. Under this agreement, the $50,000 would be non-refundable, and the $205,000 deposit would remain in the attorney's escrow account until July 25.

In another agreement of which the plaintiffs were not aware, also entered into on July 18, Torguson agreed, in effect, to replace the $205,000 held in the seller's attorney's escrow account. On July 19, Torguson transferred the money to the escrow account and, thereafter, the seller's attorney transferred $205,000 to Gistis.

Ultimately Torguson paid Johnston Development $898,998 for the right to purchase the race track, of which Johnston transferred $445,000 to Miller.

Eventually, the plaintiffs brought claims against Johnston, Johnston Development, and Miller, alleging, among other things, breach of fiduciary duty. The plaintiffs ultimately obtained a default judgment against Johnston and Johnston Development, and the claim against Miller proceeded to trial.

Following a bench trial, the trial court found that Miller breached his fiduciary duties to the plaintiffs by using the $205,000 deposit from Gistis, which belonged to Lakes Region Gaming and "which was being held for the purpose of owning the race track," in order to appropriate for himself the opportunity to sell the purchase rights to Torguson. The trial court ruled that Miller was jointly and severally liable with Johnston and Johnston Development for damages in the amount of $898,998, and ordered him to pay the plaintiffs' attorney's fees and costs. *See* RSA 304-C:76, III (2005) (amended 2012).

Miller unsuccessfully moved to reconsider the trial court's decision, arguing that: (1) he did not owe a fiduciary duty to the plaintiffs because Lakes Region Gaming "had abandoned [its] contemplated dealings"; and (2) the trial court's order failed to consider paragraph ten of Lakes Region Gaming's operating agreement. This appeal followed.

■ Miller first argues that the trial court erroneously ruled that he had a fiduciary duty to the plaintiffs when he was only a minority member of Lakes Region Gaming. However, the record does not reflect, and Miller has not pointed to, any evidence that he made this argument in the trial court. *See Town of Atkinson v. Malborn Realty Trust*, 164 N.H. 62, 69 (2012). It is the burden of the appealing party, here Miller, to provide this court with a record sufficient to demonstrate that the issues on appeal have been raised before the trial court. *See id.* Because Miller has not demonstrated that he preserved this argument for our review, we decline to address it. *See id.* at 69-70.

We likewise decline to address Miller's argument that the trial court erred when it found him jointly and severally liable for the damages in this case. As with the first argument, Miller has failed to demonstrate that he raised this argument in the trial court, and it, too, is not preserved for our review. *See id.* at 69-70.

■ Miller next contends that the trial court erred when it ruled in favor of the plaintiffs because, he claims, the assets at issue, the right to purchase the race track for approximately $4 million and the $205,000 deposit, did not belong to Lakes Region Gaming, and, therefore, the plaintiffs lacked

standing to bring an action based upon them. Although Miller did not raise this argument in the trial court, because it questions the trial court's subject matter jurisdiction, we address it. *See Baines v. N.H. Senate President*, 152 N.H. 124, 128 (2005) (we will review subject matter jurisdiction claims, even if raised for the first time on appeal); *In re Guardianship of Williams*, 159 N.H. 318, 323 (2009) (whether party has standing presents question of subject matter jurisdiction).

Contrary to Miller's assertions, the trial court, in fact, found that both the right to purchase the race track and the escrowed deposit belonged to Lakes Region Gaming. The court found that "Johnston had an obligation to transfer his rights at closing, which Lakes [Region] Gaming could have enforced if he refused to do so." Accordingly, the court found, "[a]t the very least, [when] Johnston was negotiating with Torguson for sale of the purchase rights, Lakes [Region] Gaming had a cause of action for specific performance to require transfer of those rights so that the closing could take place."

The trial court also found that the deposit was held in escrow "for the purpose of purchasing the race track for [Lakes Region Gaming] and its members," or to sell the right to purchase the track "so the parties could recover their expenses and perhaps even make a profit." In short, while in escrow, the deposit "was only to be used for the benefit of [Lakes Region Gaming]."

Although Miller testified that he believed that the right to purchase the race track belonged to Johnston and that the escrowed deposit was merely a "loan" to Johnston, the trial court "d[id] not credit any of this testimony." We defer to the trial court's judgment on such issues as resolving conflicts in testimony, assessing the credibility of witnesses, and determining the weight of the evidence. *Cook v. Sullivan*, 149 N.H. 774, 780 (2003).

Moreover, Miller has not challenged *any* of the trial court's factual findings on appeal. Accordingly, Miller's standing argument, which is premised upon a view of the facts that the trial court specifically rejected, is unavailing.

Finally, Miller asserts that the trial court erred when it failed to consider paragraph 10 of Lakes Region Gaming's operating agreement, which provides, in pertinent part:

Nothing in this Agreement will preclude any Member or Manager(s) from engaging in any business or making any other investment, even though such business or other investment may be in competition with the Company. Any such business or investment may be undertaken with or without notice to or

participation therein by the other Members or the Manager(s). Each Member and the Company acknowledge that the conduct described in the preceding two sentences does not constitute a breach of any fiduciary duty by the Member(s) or Manager(s) so engaged. Further, each Member and the Company hereby waive any right or claim he or it may have against the other Members or the Manager(s) with respect to any such activity or the income or profits therefrom.

Miller contends that his conduct cannot be deemed to be a breach of fiduciary duty because it constituted "competition." He explains: "Once the decision had been made not to proceed with the purchase, or any alternative to lead to a closing, capitalization of [Lakes Region Gaming], and an actual transfer of the . . . bid rights [to] [Lakes Region Gaming], any actions taken by any of the members, or one of them, could occur in competition with the interests of the other members." The plaintiffs counter that Miller was not merely competing with Lakes Region Gaming; he and Johnston sold the company's primary business asset — the right to purchase the race track for $4 million — and then secretly used Gistis's escrow deposit to do so.

█ Because the operating agreement is a form of contract, we will apply the general rules of contract interpretation. See Robbins v. Salem Radiology, 145 N.H. 415, 417 (2000) (addressing interpretation of partnership agreement). "As a general rule, the proper interpretation of a contract is ultimately a question of law for this court, and we will determine the meaning of the contract based on the meaning that would be attached to it by reasonable persons." Id. (quotation omitted).

We agree with the plaintiffs that paragraph 10 did not allow Miller to use Lakes Region Gaming's assets to enrich himself. Miller's argument is premised upon his mistaken assumption that the purchase rights and escrowed deposit did not belong to Lakes Region Gaming. However, the trial court found that both of these assets belonged to Lakes Region Gaming, and given Miller's failure to challenge this finding on appeal, we uphold it.

█ Although Miller raised other issues in his notice of appeal, he has not briefed them, and, therefore, they are deemed waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

*Affirmed.*

HICKS and LYNN, JJ., concurred.